21-15751. It is on the motion for attorney's fees, so we will hear first from the movant, Mr. Marston. Good morning, or good afternoon. Good afternoon, your honors. It's a pleasure to be in front of you again. I'm the Lester Marston, representing the five appellee tribes in this case, and I'd like to reserve two minutes of my time for a rebuttal. May it please the court, this court can grant the tribe's motion for attorney's fees under 1021.5 because this case raised and invoked the interpretation and application of state law, and the federal courts could not grant any relief in this case without applying and interpreting state law. We pled in our complaint, Government Code Section 98005, which did two things. First, that statute removed the barrier that allowed the federal court to exercise its full 1331 IGRA 2710 jurisdiction to literally be able to afford the relief that we were requesting. Second, it specified the very causes of action that we had to plead. It specified that we had to state a cause of action arising under the IGRA, alleging that the governor negotiated in bad faith. Right, I mean, the claim was really a claim brought under federal law, right? That was the cause of action? We pled two causes of action, both of which arose under federal law, that's correct. Right, so, but there's not a fee-shifting provision in the IGRA. That is correct. So, what's your argument as to why that's not dispositive? Well, our argument is that the legal analysis that this court applied in Independent Living Center versus Kent can be, that legal analysis is very similar to the legal analysis that should be applied in this case.  the plaintiffs pled federal causes of action. In Kent, the state waived its immunity from suit. Did they though? I thought it was a state cause of action. It was, it was like a state law writ in Kent. Well, they pled both a a writ, they pled California Code of Civil Procedures, section 1085, but interestingly enough, they never made application for writ of mandamus, nor did they ever obtain a writ of mandamus. They pled federal causes of action, violations of the Medicare Act, and in fact, those federal causes of action were dismissed. Instead, the parties settled. And so, and then, of course, in Kent, those, those plaintiffs made application for attorney's fees, just like we're doing here under 1021.5. And so, the issue in Kent was, well, if you didn't actually obtain any relief under 1085, could the federal court apply, in that case, 1021.5, toward the plaintiff's attorney's fees? And this court said they could. And they could because 1085 was a state mechanism, state law mechanism, that actually allowed the plaintiffs to be able to seek and obtain, in that case, mandamus relief, injunctive relief. Here, we pled government code section 98005, and it effectively does the same thing in our case. Without 98005, first of all, we can't even get in through the courtroom door. It removes the barrier of sovereign immunity to allow the federal district court to exercise jurisdiction. That, coupled with the fact that once we were in the courtroom door, the federal court can't even decide whether there was a violation of federal law without looking at state law. You three judges know what you did. You had to look at the state's environmental laws, the personal injury laws, their family laws, to determine whether those state laws were directly connected to the operation of gaming activities. Just tell me, what is the test you want us to adopt for an attorney's fees motion like this, where the claim is a federal claim, right? There were some state law issues to work through before, but what is the test, that there's lots of state law issues in the case, or that state law sort of created the situation that led to the federal cause of action? Because what you don't, it doesn't seem that there's any state claim here, right? And so if that were the test, then you'd lose. You're asking for something that's a little bit different. So what is the test? Okay, so this is a unique case, but it's not a pure federal law case. At the very heart of this litigation was the application, interpretation, and enforcement of state law. Could the state demand that the tribes comply with these various state laws? So, you know, it's litigation, it's kind of messy. But when you take the fact, I would assert that we pled a claim under state law, and that is 9800- Counsel, can I ask, could you have brought your IGRA claim in state court? Well, Your Honor, assuming first of all, that there was a waiver of the state's immunity that would allow us to bring suit, and that the state court would otherwise have jurisdiction, yes, we could have pled in state court a violation of Government Code Section 120.12.25, which places a mandatory non-discretionary duty on the governor under state law to negotiate gaming compacts with the Indian tribes in good faith. And we could have included our federal causes of action that we did plead in this case under the IGRA. And- Counsel, conversely, could you have added that state cause of action to your complaint that you filed in federal court for the IGRA violation? In this case, Your Honor? Yes, could you have stated a- Yes. A cause of action under state law, just added it as one of your claims in this case? Yes, you have to look at the fact that Government Code Section 98005, Government Code Section 120.25, and for that matter, Article IV, Section 19F of the California Constitution are all part of a California legislative scheme that was enacted by California to give the tribes the very remedy that we pursued on our federal causes of action. Nancy, why didn't you plead a state claim for which you would clearly be entitled to the benefit of the attorney fee shifting statute here? Well, hindsight, Your Honor, if I went back four and a half years, I would have, but I don't need to in order for you to award attorney's fees in this case. When you look at 98005, it specifically states that a federally recognized Indian tribe in any action has to plead a cause of action. They use any cause of action arising under the IGRA to compel the governor to negotiate in good faith. So the statute removes the sovereign immunity barrier to plead those very specific causes of action, and we prevailed on those very specific causes of action that 980805 compels us to plead and gives us the waiver of immunity. So your argument is essentially that the waiver of sovereign immunity creates a state cause of action? It doesn't create a state cause of action. It removes the barrier that allows the federal court to exercise its full 1331 and IGRA 2710 jurisdiction. Only Congress can grant, as you know, Your Honor, can grant jurisdiction to the federal courts. But by removing the barrier, 98005 provides the state law mechanism that allows our case to be brought in federal court, allows the federal court judges to determine whether there's been a violation of federal law, and allows us to seek the very relief that we obtained from you three judges, an order compelling the governor to proceed to the IGRA remedial process. So just like Kent, 1085 was a state law mechanism that waived the state's immunity from suit and allowed the plaintiffs to pursue a remedy, a writ of mandate, ordering the state officials to comply with federal law. 98005, in my opinion, is the functional equivalent of 1085, because without it, the tribes can get no relief. And make no mistake about it, the state has waived their immunity from suit here. 1021.5, the California Court of Appeals in Ryan v. Muni Court held that 1021.5 was all the statutory law that a plaintiff needed for a court, and the statute is clear and ambiguous. It says a court, meaning both either a federal or a state court, can award fees on an action. And that is a cause of action. As long as the preconditions under 1021.5 are met. And we met all of the conditions. When you couple 1021.5 with 98005, where, once again, the language is clear and unambiguous. It says that the state consents to the jurisdiction of the United States District Court. On what?  that the statute requires the tribes to plead in which they did plead in this case, which are violations of the IGRA, to compel the state either to negotiate or to compel the state to negotiate in good faith. As long as you find that the legal analysis that utilized in Kent to award fees to the plaintiffs in that case, applies in this case, then you can find that under 98005, that gave the federal court jurisdiction to hear the tribes' federal causes of action and that ancillary to that jurisdiction that the court can award attorney's fees in the exercise of its jurisdiction over the tribes' main causes of action. In addition, the state, in my, I would argue the state waived their right to assert sovereign immunity in this case. We pled in our complaint a prayer for relief. We requested attorney's fees. We put the state on notice. When we filed the First Amendment complaint in the district court, that we were gonna be seeking fees. Did they assert their 11th Amendment immunity or their sovereign immunity in the district court? No. Did they assert it here before you three judges? No. Now after there's a final non-impedible judgment, for the first time, they're trying to assert their sovereign immunity to bar our motion for attorney's fees. I would put to you that they can't do that, that they have now waived that through their delay and their failure to assert it previously when we first filed our action. Finally, the tribes meet all of the preconditions for an award of fees under 1021.5. The state argues that we don't meet one of the preconditions, which is that we're not entitled to fees because we had a pecuniary interest in the outcome of this case. Nothing could be further from the truth. The tribes never pled a cause of action for money damages here. This case has always been for these tribes, I mean, their sovereignty, their right to be free of state regulation and control. That is why they brought this case. It was never about money damages. And they achieved an excellent result. They conferred a significant benefit, I would say, on the general public, but certainly on a large group of people. And that group of people were the Indians who depend on gaming and the Indian tribes that engage in gaming. And for all of those reasons, I believe that you can apply the legal analysis that you applied in Kent and find that you can take 1021.5 and award the tribe's attorney's fees in this case under 1021.5. And I'll reserve the remainder of my time for rebuttal. Okay, thank you, Mr. Marston. And we'll hear from Ms. Feinberg. Thank you, Your Honor. And may it please the court. The plaintiffs in this case pleaded and prevailed on two federal claims, both under section 2710 of the Indian Gaming Regulatory Act. In that circumstance, federal law and not state law governs the availability of attorney's fees. And there's no dispute in this case that neither IGRA nor any other federal law entitles either party to attorney's fees. Now, my friends have relied on this court's decision in Kent to ask the court to apply California's private attorney general statute in this case. But in Kent, the claim that was asserted was created by federal law, or excuse me, was created by state law. And indeed, there was no federal private right of action even available in that case. When a federal court is adjudicating a federal claim, it is up to Congress to decide the circumstances under which a fee award is appropriate. And in this circumstance, Congress has decided that only a very specific, narrow, remedial scheme is available to a party that prevails in an IGRA suit. The plaintiffs here did not plead, they did not prevail on any state law claim, and federal law therefore controls the outcome of my friend's motion. Now, I wanna address, if I might, my friend's contention that there was state law present in this case, or called on the court to construe state law in some respect. We dispute that as a factual matter, but in any event, that is not a test. The test for whether state or federal attorney's fee provisions apply is a binary one. It is whether the claim is created by state law, or whether it is created by federal law. And I believe I heard my friend concede that the cause of action, or the claim in this case, was federal law, and that section 98005 did not itself create state law, excuse me, create a state claim. And that is enough to decide this case. Now- How do you read, there's some parts of Kent that talk about the role of state law in that litigation.  Because there's obviously discussion at the beginning, as you say, about the nature of the claim. Then there's discussion about the role that state law played in the case. Do you read that as sort of extra, or is it more evidentiary of what the claim was in that case? How do you interpret that? Your Honor, the court did observe that it had interpreted state law in its prior decision in that case. But the dispositive consideration there was whether state or federal law actually created the claim. And the court recognized that there were federal allegations underlying the plaintiff's challenge in that case, in particular, a federal supremacy clause assertion. But it nevertheless concluded that the mere presence of those federal allegations was not sufficient to convert what had been pleaded as a state law claim into a federal claim. And by parity of reasoning here, the presence of a state law in the backdrop of this case is not sufficient to convert what were pleaded as federal claims into state claims. And I think there are a couple other reasons why the sort of diffuse test that my friends have asserted cannot be correct. The first is that what I alluded to before, which is when Congress creates a claim, it is up to Congress to decide whether success on that claim will bring attorney's fee award with it. The second is that Kent is premised on an application of the Erie Doctrine. And generally speaking, Erie directs federal courts to apply state law when they are adjudicating a state law claim. And the reason for that is because to ensure consistency and to avoid the kind of forum shopping that would occur if a federal court, if the outcome of a state law claim was different depending on if it were pleaded in state or federal court. Could this case have been brought in state court? These particular claims, no, your honor, because the state's waiver of immunity in section 98005 waives immunity only in federal court. And your honor, the third reason why my friend's test cannot be correct is because it is an entirely, for practical reasons, it's entirely unadministrable. And indeed it would be no line at all in situations in which the state is a defendant where almost invariably state law will be somehow in the backdrop of the case. Council, where did you come up with your test that has to require a state cause of action? It's not from the text of 1021.5, right? Your honor, it's not. It's from the basic sort of choice of law principles for lack of a better way to describe them that underlie the Erie Doctrine. And it is also the test that this court applied in Kent. It looked to whether state or federal law  And there it concluded that 1085 created the claim. And the analogy that my friends have tried to draw between section 98005 and 1085 really does not hold. In section 1085, that state law creates a claim that allows a court to issue a writ of mandate against a state official. 98005, in contrast, waives a defense to a claim that is created elsewhere. In particular, a sovereign immunity defense to an IGRA claim. And I also think it would be odd to think that 98005 is similar in the relevant respects to section 1085 because section 98005, as I alluded to a moment ago, waives the state's immunity in federal court order. And so if section 98005 is thought to create a state claim, it would be a state claim that could never even be brought in state court. And so I don't think the court can see section 98005 in the same way that the court regarded section 1085. Are there state law claims that could have been brought here? Your honor, I don't think so. My friends have cited section 12012.25D and section 19F of article four of the state constitution. Neither of those provisions imposes on the state IGRA-like duties. 12012.25D simply assigns the governor the authority to negotiate on behalf of the state. And article four, section 19F simply lifts the otherwise existing ban on casino-like gaming activities. Your honor, I'd like to mention a couple additional points. Before you move on, can I ask one question? Can a state create a fee-shifting statute for a federal cause of action? Your honor, I don't think so. I think that is Congress's prerogative. And I think that principle has particular force in this setting where Congress has made a very deliberate choice in the remedial scheme that is set forth in IGRA, as the court has said. What's the constraining principle just of why a state couldn't say, if you bring a federal cause of action in California and you prevail and these other provisions are met, then you get a fee-shifting statute. You get a fee-shifting award. Your honor, I think it's because when Congress creates a claim, Congress gets to decide what follows from success on that claim. And if a state creates a cause of action that parallels the federal claim and provides for rights or remedies as a matter of state law, that, of course, is a different situation. But if the claim that has been pleaded and on which the plaintiff has prevailed is created by Congress, then it's Congress's decision what follows from a violation of that provision. And I think that- I would agree that Congress could definitely give you the floor, or I'm not sure they could give you a ceiling. Why couldn't the state say, we want to provide more than Congress provided? Your honor, I think the state absolutely could create a claim that said, as a matter of state law, if you violate a federal law, you are entitled to a state law remedy and a state law attorney's fees for success on that state law claim. But I think that's a very different situation where what we have here, where Congress has created the claim in IGRA and made a very deliberate decision in what kinds of remedies would follow if there was a determination that a state violated the duty to negotiate a compact and good faith. Under IGRA, after such a determination is made, all a court can do is order the state and the tribe to conclude a compact within 60 days. If that's not successful, then each submits a proposal to a mediator. The mediator selects a proposal and if the state doesn't accept the mediator's proposal, then it goes to the Secretary of the Interior. That is a uniquely discreet, modest, narrow set of remedies with which a state attorney's fee award is incompatible. It would disrupt that careful remedial scheme that Congress has set up. Could the compact have had an attorney's fee shifting provision? Your Honor, they could for violations of the compact. They do not in this case. And my friends have not asserted that the compact is the source of any rights in this particular, with respect to this particular request for fees. But could they have? Is there anything inconsistent? I realize it's not directly at issue, but some of these things bear on different aspects of the theories here. Could they have, could the parties have agreed in the compact to this kind of, to the fee type request that they're seeking here? Your Honor, I think IGRA allows the parties to negotiate what follows from a breach of the compact. And so if the parties put in a compact a provision that said, if one or the other party breaches the compact, we each waive immunity from and allow the other to seek fees in connection with an enforcement of a provision of the compact, I think that probably would be permissible. But there you would have a contractual arrangement and a specific waiver of immunity with respect to that relief, which is not what we have here. And I do wanna address, if I might, my friend's contentions about the state's waiver of its immunity, and I have three quick points. If I could, before you move on to that, can I ask a quick question? So what if, under your theory, could California have added a sentence to 98005 saying whoever is the prevailing party in this action would get fees? Not if it were, it couldn't. It couldn't engraft a remedy on an IGRA violation, but it could create a separate state-based right to which it waived its immunity in federal court. So like a state IGRA that had its own fee shifting, it could do that, it just couldn't append to a federal claim, state-based attorney's fees? I think that's right, I think that's right. Is that a constitutional provision? That sounds right, but I'm just trying to locate where that is, where you get that body of law from. Your Honor, I think it follows from the principle that when you have a federal cause of action, it is Congress that makes the decision about what the parameters of that cause of action are. And I think the other really important point is section 98005 doesn't do that in any event. Now, could it have said, in addition to waiving our immunity from an IGRA claim in federal court, we permit tribes to sue the state under the following additional circumstances, and if they prevail on those additional circumstances, fees are available for that state cause of action. Of course, there would be the question of the federal court subject matter jurisdiction, but there would be, nevertheless, a fee award that would be appended to a state-created claim, which is not what we have here. There is no state-created claim here. If I might address three quick points in regard to my friend's assertions regarding the waiver of our immunity. First, with respect to the scope of 98005, that provision only waives the state's immunity with respect to an IGRA claim, and as the California Supreme Court said in the Hotel and Restaurant Employees case, that provision restores the remedies under IGRA, so the waiver extends only to an IGRA claim and an IGRA remedy, and those remedies do not include fees. Section 1021.5 also does not waive the state's immunity. Section 1021.5, even to the extent to which it might waive the state's immunity in state court from a fee award, the rule is that a state's consent to suit in its own courts does not extend the waiver to federal courts. Instead, for a state to waive its immunity from a form of relief in federal court, it has to be expressed. Hey, counsel, can I ask a quick question? If we were to agree with you on the fee-shifting statute that it only applies to state causes of action, do we have to reach the 11th Amendment question, or is that a jurisdictional question we have to reach first, or can we ignore it? No, Your Honor. It is sufficient to decide this case to hold that Section 1021.5 does not apply at all. So no, the court does not need to reach it. And just to close out on the sovereign immunity issue, which we think the most straightforward way, Judge Bumate, for the court to decide the case is not to reach the immunity issue and to simply conclude that 1021.5 doesn't apply, but to simply respond to my friend's contention that we've waived our immunity through conduct. That is a stringent test. The state has to act in ways that are incompatible with its immunity and to make a clear declaration that it is submitting itself to a particular remedy in federal court. It has not done that in this case. While the complaint mentioned attorney's fees, it did not cite 1021.5, which is the legal basis on which my friends are now seeking fees. And this motion is the first time that our friends have asked for attorney's fees and the state responded immediately by asserting its immunity from that claim. Okay, we've let you go a little over. I want to see if my colleagues have any further questions for you. Okay, thank you, Ms. Feinberg. Thank you, Your Honor. We ask the court to deny the motion. Mr. Marston, we'll give you two minutes. I try to speak fast. With all due respect to opposing counsel, she's just wrong on a whole number of issues and I'll try to point out each one of them. First of all, I could have brought my disaction in state court. I could have pled a violation of government code section 12012.25. If you look at that government code section, what it does is it appoints the governor as the chief negotiator for the state of California and imposes upon him the duty to negotiate gaming compacts with the Indian tribes in the state under the IGRA. So what did this court find that the governor did? They found that he negotiated in bad faith. Is that not a violation of his duty that's imposed upon him under state law to negotiate gaming compacts with the Indian tribes under the IGRA? It most certainly is. I could have also pled... Isn't the IGRA what gives you the remedies, though, that you need to be able to move this process forward? No, I could have, as part of my state court action, pled California Code of Civil Procedures section 1085, which waives the state's immunity from suit. In Kent, the whole reason that the state removed the action to federal court was because they were form-shopping. They were trying to get around the waiver of immunity under 1085 and they actually pled immunity once they got into federal court. So I could have pled a violation of 120.25, sought to writ a mandate compelling the governor to comply with 120.25, and I could have tacked on my federal claims. So that's the first issue that she's wrong on. The second issue that my respected colleague is wrong on, the state courts award attorneys' fees under 1021.5 all the time on federal causes of action. And the California Court of Appeals in Ryan v. Municipal Court, 113 Cal. App. 3rd. 807, specifically held that the language contained in 1021.5 waives the state's immunity to allow a court, that's the language in the statute, a court. And the California courts have held that a court is a federal court or a state court. And on any action, which is any cause of action, state or federal. So if I had pled federal causes of action in state court and I prevail on those federal causes of action, the California courts have expressly held that I can move for fees and I'm entitled to fees under 1021.5. So that was the second thing she was wrong on. We'll let you wrap up. Why don't you wrap up in the next 30 seconds unless my colleagues have further questions, but we'll give you a wrap up here. I would put to you that I prevailed on a state claim. 98005 is the waiver and it does those two things, right? It expressly states the causes of action that I have to plead and it states that those federal causes of action have to be federal causes of action. Did I not prevail on my federal causes of action? I most certainly did. I prevailed on the very federal causes of action that 98005 expressly authorized. And I would put to you that's a claim and I prevailed and I'm entitled to fees. And these tribes, the chairman for the Chemehuevi Indian tribe, Glenn Lodge, said it very well in his declaration in support of our motion for attorney's fees. They're not wealthy tribes. They don't have a lot of money. Hopland doesn't even have a casino operating. Chemehuevi, they don't have enough revenue generated to provide their tribal members with even the most basic governmental services. They didn't have the money to bring this case. They pulled their money together to be able to litigate it. And while justice is blind, it's not cheap. And they prevailed in this case and they're entitled to their fees. Thank you. I think we have your argument. Mr. Marston, thank you. Ms. Feinberg, thank you. This matter is submitted. And that concludes our court this afternoon. All rise.
judges: WARDLAW, BRESS, BUMATAY